UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLIFFORD ONOFRIO,

    Plaintiff,

        v.                                                  No. 3:15-cv-1744(WIG)

RAYMOND SAVOY and
STEPHANIE SAVOY,

    Defendants.
_____X

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Clifford Onofrio ("Onofrio") brings this diversity action against Raymond Savoy and Stephanie Savoy ("Savoys") alleging various state law claims. This case is – in essence – a dispute between neighbors. Onofrio's claims arise from police responding to a noise complaint made by the Savoys on December 12, 2012. Now before the Court are the Savoys' Motions for Summary Judgment. [Doc. ## 36, 37]. For the reasons that follow, the Court grants the motions and dismisses Plaintiff's complaint it its entirety.

### Background

Onofrio commenced this action on November 25, 2015. He filed an Amended Complaint on December 20, 2016, seeking to assert the following claims against the Savoys: intentional infliction of emotional distress, invasion of privacy, slander, and malicious prosecution. On November 24, 2017, the Savoys moved for summary judgment on all counts. Onofrio filed an opposition on December 15, 2017. In violation of Local Rule 56, Onofrio's opposition did not

1

include a 56(a)(2) Statement of Facts in Opposition to Summary Judgment.[1] The Court ordered Onofrio to submit this statement. He did so on February 5, 2018.

**Facts**[2]

In 2011, Onofrio purchased a condominium, Apartment 2B, in Naugatuck, Connecticut, and hired a contractor to do some renovation work. The Savoys lived next door, in Apartment 2A. Onofrio alleges that the Savoys did not like him because they thought the contractor who was doing the renovations made too much noise. [Plaintiff's Rule 56(a)(2) Statement, Doc. # 42, at ¶ 7]. According to Onofrio, the Savoys began to retaliate against him by banging walls, dropping things, and making noise in their own apartment. [*Id.*].

The impetus of the instant action occurred on December 12, 2012. On that date, several Naugatuck police officers were dispatched to the Savoy residence to respond to their complaint of noise coming from Onofrio's apartment. The Savoys told the responding officers that Onofrio

---

[1] *See* District of Connecticut Local Rules of Civil Procedure 56(a)2 ("(i) A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c). This portion of the Local Rule 56(a)2 Statement shall be double-spaced and shall be no longer than twice the length of the moving party's Local Rule 56(a)1 Statement, absent leave of the Court granted for good cause shown. All admissions and denials shall be binding solely for purposes of the motion unless otherwise specified. All denials must meet the requirements of Local Rule 56(a)3. A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law. (ii) The Local Rule 56(a)2 Statement must also include a separate section entitled 'Additional Material Facts' setting forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 any additional facts, not previously set forth in responding to the movant's Local Rule 56(a)1 Statement, that the party opposing summary judgment contends establish genuine issues of material fact precluding judgment in favor of the moving party. The statement of Additional Material Facts shall be no longer than nine (9) double-spaced pages, absent leave of the Court granted for good cause shown.").

[2] The following recitation presents the facts in the light most favorable to Onofrio but notes any direct dispute between the parties. Facts that are not in dispute are stated without citation to the record.

had been hitting walls, screaming, and slamming doors that day.[3] They also told the officers that similar incidents had been occurring for about a year and a half, and that these incidents were distracting and disturbing, and frightening to their young family members. Onofrio was issued an infraction for creating a public disturbance in violation of Conn. Gen. Stat. § 53a-181a in connection with the December 12, 2012 police encounter. In July 2013, a *nolle prosequi*[4] was entered with respect to the infraction issued against Onofrio.

The Savoys maintain that all of the information they provided to the police on December 12, 2012 was true and accurate to the best of their knowledge. [Defendants' Rule 56(a)(1) Statement, Doc. # 36-1, at ¶ 5]. They deny intentionally causing any type of disturbance to distress Onofrio, and deny any involvement in the police's decision to issue Onofrio an infraction for creating a public disturbance on December 12, 2012. [*Id.* at ¶¶ 6-7]. They aver that any emotional distress Onofrio experienced was a result of his chronic mental illness and not connected to his experience in the condominium. [*Id.* at ¶¶ 8-9].

Onofrio alleges that his son, his health aides, and his friends had all also heard the Savoys being loud and disruptive. [Plaintiff's Rule 56(a)(2) Statement, Doc. # 42, at ¶ 5]. He claims that the Savoys, who have connections to the Naugatuck police department[5], called the police because they wanted to intimidate him and cause his arrest, and believed that their connections

---

[3] Onofrio concedes that, on December 12, 2012, he hit the adjoining wall, alleging he did so in response to noise coming from the Savoys' unit. [Plaintiff's Rule 56(a)(2) Statement, Doc. # 42, at ¶ B2].

[4] The Connecticut Practice Book provides that "[a] prosecuting authority shall have the power to enter a *nolle prosequi* in a case. It shall be entered upon the record after a brief statement by the prosecuting authority in open court of the reasons therefor." Conn. Practice Book Sec. 39-29. A *nolle* is "a unilateral act by a prosecutor, which ends the pending proceeding without an acquittal and without placing the defendant in jeopardy." *State v. Kallberg*, 326 Conn. 1, 12-13 (2017).

[5] Onofrio asserts that Raymond Savoy is a retired police sergeant and Stephanie Savoy is a member of the town police commission. [Plaintiff's Rule 56(a)(2) Statement, Doc. # 42, at ¶ 6].

3

would make them more credible to the officers. [*Id.* at ¶ 6]. Plaintiff states he was traumatized by his arrest on December 12, 2012, and as a result of it, he expended legal fees to resolve the charge. [*Id.* at ¶¶ B3, 7].

## Legal Standard

The court shall grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is identified by the substantive law under which the claim is brought, and is one that may make a difference in the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *Am. Int'l Group, Inc. v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981).

The court's function in ruling on a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the court should review all of the evidence in the record and resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court, however, may not make credibility determinations. *Id.* "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991). Stated differently, "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v.*

*Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Keeping these standards in mind, the Court discusses Onofrio's claims in turn.

## Discussion

### A. Intentional Infliction of Emotional Distress

The Savoys move for summary judgment with respect to Onofrio's claim for intentional infliction of emotional distress. They argue (1) they did nothing more than report information to the police that was true and accurate to the best of their knowledge; (2) they did not act intentionally to cause distress to Onofrio; and (3) Onofrio's distress was caused by his chronic mental illness, and not his interactions with them. In opposition, Onofrio contends that whether the Savoys' conduct rose to the level required to prevail on an intentional infliction of emotional distress claim is an issue of fact not resolvable on a motion for summary judgment. The Court agrees with the Savoys and grants summary judgment on this claim.

In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish four elements. He must show: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266-67 (1991).

The extreme and outrageous conduct element requires the defendant's conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 211 (2000). Put another way, a defendant's conduct that is "merely insulting or displays bad manners or results in hurt feelings

5

is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* (citing *Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 19 (1991)). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn. App. 290, 295 (2005). In making this determination, "the court performs a gatekeeping function," by assessing whether, "as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 92 Conn. App. 835, 847 (2006).

Here, even assuming Onofrio has presented evidence to establish the other three elements of his intentional infliction of emotional distress claim, the claim fails because the Savoys' conduct was not extreme and outrageous as a matter of law. Even if there were instances of noise coming from the Savoys' apartment, and even if the behavior of the Savoys was less than neighborly, their actions were neither extreme nor outrageous. A review of the case law indicates that behavior of the type alleged here simply does not amount to conduct that is "atrocious, and utterly intolerable in a civilized community." *Appleton,* 254 Conn. at 211.

For example, actions including a homeowner's association rejecting a plaintiffs' choice of exterior paint color, retaliating against the plaintiffs, and "selectively and vindictively imposing fines on them" did not amount to the extreme or outrageous conduct required to state a cause of action for intentional infliction of emotional distress. *Hartmann*, 88 Conn. App. at 295. Further, actions including a plaintiff's former husband repeatedly threatening her in an angry and hostile manner, threatening to evict her from the marital residence, and changing the locks to the marital residence were not extreme and outrageous as a matter of law. *Davis v. Davis*, 112 Conn. App. 56, 67 (2009).

The conduct Onofrio alleges here is no more extreme or outrageous than that described in *Hartmann* or *Davis*. Although the parties' interactions may have been less than cordial, and perhaps even occasionally troublesome or disturbing, the Court would be strained to find that the Savoys' conduct met the legal definition of extreme and outrageous. Even taking the facts as Onofrio presents them, the Savoys' actions simply cannot be described as so atrocious and intolerable as to cause an average member of the community to exclaim "Outrageous!" *Appleton*, 254 Conn. at 210-11. Therefore, the Court grants summary judgment in the Savoys' favor on this claim.

### B. Invasion of Privacy

The Savoys also move for summary judgment with respect to Onofrio's invasion of privacy claim, arguing that he cannot establish the publicity element of the cause of action. Onofrio, in his opposition, does not address – at all – the Savoys' argument that they are entitled to summary judgment on the invasion of privacy claim. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified,* No. 01-CV-5750 (ILG), 2003 WL 21781941 (E.D.N.Y. July 29, 2003); *accord Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (citing cases). Since Onofrio has abandoned his invasion of privacy claim, summary judgment is granted in favor of the Savoys.

Even if the claim has not been abandoned, it has not been established as a matter of law. Connecticut recognizes four types of invasion of privacy claims: "(1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to

7

private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye." *Honan v. Dimyan*, 52 Conn. App. 123, 132 (1999) (quoting *Venturi v. Savitt, Inc.,* 191 Conn. 588, 591 n. 1 (1983)). Here, the Court construes Onofrio's invasion of privacy claim as either the third or fourth type because it is based on the Savoys allegedly "falsely and maliciously" telling the responding Naugatuck police officers that Onofrio had been "hitting the common walls, creaming and slamming doors, causing them great irritation and anxiety, for approximately eighteen months." [Amended Complaint, Doc. # 29, at ¶ 5]. Therefore, in order to prevail on his invasion of privacy claim, Onofrio must establish "publicity."

"The publicity associated with invasion of privacy means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 131 (D. Conn. 2012) (internal quotation marks omitted). A communication to "a single person or even to a small group of persons" does not amount to an invasion of privacy because the communication needs to reach, or be "sure to reach, the public at large." *Id.* at 132.

Here, the Savoys communicated their complaints about Onofrio to the handful of police officers who responded to their call on December 12, 2012. This does not amount to a communication to the public at large. *C.f. Pace v. Bristol Hosp.*, 964 F. Supp. 628, 631 (D. Conn. 1997) (employer's conduct of communicating grounds for the plaintiff's discharge to hospital managers, relevant contractors, and interested coworkers "[did] not establish the requisite level of publicity for an invasion of privacy action."); *Handler v. Arends*, No. 0527732 S, 1995 WL 107328, at *14 (Conn. Super. Ct. Mar. 1, 1995) (no publicity when a university

8

official shared with ten of plaintiff's colleagues a memorandum inaccurately portraying the circumstances surrounding denial of plaintiff's tenure application because the communication was made for business purposes and did not invite broader dissemination to the public).

Even assuming Onofrio has established the other elements of his invasion of privacy claim, based on the uncontested facts taken in the light most favorable to Onofrio, the information the Savoys provided to the officers was not "publicized." There is no indication that the information communicated was disseminated beyond the initial audience of the responding officers. Rather, the facts show that the Savoys provided information to police, who were acting in their official roles, so that the Savoys could seek the officers' professional help, and that this information was not disseminated broadly or shared with the public at large. Accordingly, the Savoys are entitled to summary judgment on the invasion of privacy claim.

### C. Slander

The Savoys also move for summary judgment with respect to Onofrio's slander claim, contending the claim is time-barred. Onofrio's opposition, again, fails to address the Savoys' argument that they are entitled to summary judgment on the slander claim. Therefore, the Court finds the claim abandoned and grants summary judgment in favor of the Savoys. *See Taylor*, 269 F. Supp. 2d at 75; *Douglas*, 21 F. Supp. 2d at 393.

Even if the claim is not abandoned, the Court agrees with the Savoys that it is barred by the statute of limitations. The purportedly defamatory conduct – the allegedly false report the Savoys made to Naugatuck police officers – occurred on December 12, 2012. [Amended Complaint, Doc. # 29, at ¶¶ 3-5]. In Connecticut, "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of." Conn. Gen. Stat. § 52-597. Onofrio filed this action on November 25, 2015, well beyond the limitations period. A

statute of limitations defense may be asserted successfully on a motion for summary judgment when, as here, there are no genuine issues of fact material to the defense. *See AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-01539(JAM), 2014 WL 7270160, at *10 (D. Conn. Dec. 18, 2014). Since the slander claim is barred by the applicable statute of limitations, summary judgment is granted in the Savoys' favor.

### D. Malicious Prosecution

Finally, the Savoys move for summary judgment on the malicious prosecution claim, asserting that the claim is not viable because the infraction issued to Onofrio was *nolled*, because an infraction cannot give rise to a malicious prosecution claim, and because they neither initiated nor procured a criminal proceeding. Onofrio alleges that the Savoys' actions on December 12, 2012 resulted in an infraction being issued against him; this is the basis of his malicious prosecution claim. [Amended Complaint, Doc. # 29, at ¶¶ 5, 6, 8].

An action for malicious prosecution requires a plaintiff to establish four elements: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Brooks v. Sweeney*, 299 Conn. 196, 210-11 (2010). Because the Court finds that, as a matter of law, an infraction cannot give rise to a malicious prosecution claim, it need not address the additional elements of the cause of action.[6]

---

[6] That said, the Court acknowledges Onofrio's argument that recent Second Circuit authority establishes that a *nolle prosequi* is a favorable termination for a malicious prosecution claim. The case to which Onofrio refers, *Spak v. Phillips*, 857 F.3d 458 (2d Cir. 2017), cannot be read that broadly. In *Spak*, the court held that a *nolle prosequi* "constitutes a 'favorable' termination for the purpose of determining when a *Section 1983 claim accrues*." *Id.* at 463 (emphasis added). The court made clear, however, that when a "federal court is analyzing the substantive merits of a plaintiff's claim, the definition of 'favorable termination' is analyzed under state law." *Id.* In

10

Plaintiff's malicious prosecution claim is based on his being cited for creating a public disturbance under Conn. Gen. Stat. § 53a-181a. According to the plain language of the statute, "[c]reating a public disturbance is an *infraction*." *See* Conn. Gen. Stat. § 53a-181a (emphasis added). The "issuance of an infraction ticket for creating a public disturbance cannot constitute the institution of a criminal proceeding" with respect to a malicious prosecution claim. *See Rogan v. Rungee*, No. CV085008476, 2012 WL 1435246, at *2 (Conn. Super. Ct. Mar. 30, 2012) (citing *State v. Jimenez-Jaramill,* 134 Conn.App. 346, 373 (2012)); s*ee also Hary v. Dolan*, No. 3:08-CV-1611(JCH), 2010 WL 419404, at *5 (D. Conn. Jan. 29, 2010) (granting summary judgment to defendant when the statute under which the plaintiff was cited was an infraction, which does not "constitute the initiation of a 'criminal' proceeding within the context of a malicious prosecution claim."); *Libby v. Santangelo*, No. 3:94-CV-1274(AWT), 1998 WL 229917, at *3 (D. Conn. Mar. 31, 1998) (granting summary judgment in defendant's favor on a malicious prosecution claim, finding that a charge under § 53a-181a is an infraction, which does not initiate a criminal proceeding).

Plaintiff relies on *Clark v. Town of Greenwich*, No. CV000179460S, 2001 WL 1561769, at *2 (Conn. Super. Ct. Nov. 21, 2001) to argue that there is a split of authority on whether issuance of an infraction is sufficient to establish the first element of a malicious prosecution claim. While the court in *Clark* denied the defendant's motion summary judgment on a malicious prosecution claim, it did so perfunctorily, and appears to have assumed, without deciding, that an infraction may be sufficient. Given that the cases cited above, which actually decided the issue, clearly hold that an infraction does not constitute the institution of a criminal

---

this case, "favorable termination" is an element of Onofrio's state law malicious prosecution claim. Thus, *Spak's* interpretation of the term in the context of accrual is inapposite.

11

proceeding in the malicious prosecution context, the Court is not persuaded that *Clark* requires it to hold otherwise. Accordingly, the Court grants summary judgment in the Savoys' favor.

## **Conclusion**

For the reasons set forth above, the Court grants Defendants' Motions for Summary Judgment as to all counts of the Plaintiff's complaint. The Clerk shall enter judgment accordingly and close this case.

It is SO ORDERED, this  24th  day of September, 2018 at Bridgeport, Connecticut.

                                                    /s/ *William I. Garfinkel*
                                                    WILLIAM I. GARFINKEL
                                                    United States Magistrate Judge